IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOLID STATE STORAGE SOLUTIONS, INC., | § § § | |
| **Plaintiff,** | § § | |
| v. | § § § | CIVIL ACTION NO. 2:11-cv-391-JRG |
| STEC, INC., OCZ TECHNOLOGY GROUP, INC., CORSAIR MEMORY, TEXAS MEMORY SYSTEMS, INC., PNY TECHNOLOGIES, INC., PATRIOT MEMORY LLC, FUSION-IO, INC., OTHER WORLD COMPUTING, INC., and MUSHKIN, INC., | § § § § § § § § | JURY TRIAL DEMANDED |
| **Defendants.** | § § | |

## STEC, INC.'S MOTION TO SEVER AND TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA

Defendant STEC, Inc. ("STEC") moves to sever plaintiff Solid State Storage Solutions, Inc.'s ("S4") claims against STEC, because the claims against STEC are not properly joined, and then transfer them to the Central District of California, which is a clearly more convenient forum for the claims against STEC in this lawsuit. To avoid repetition of argument, STEC incorporates and joins in the currently pending motions to sever filed by Fusion-io (Dkt. No. 57) and OCZ Technology (Dkt. No. 74).

I.   BACKGROUND

A.   Factual Background

STEC is a California corporation with its principal place of business in Santa Ana, California, within the Central District of California. (Finke Decl.[1] ¶ 3). The STEC SSD products at issue in this case were primarily researched, designed, developed, and tested in Santa Ana or at STEC offices in Malaysia, Taiwan, India, or the United Kingdom. (*Id.* ¶ 4) Decisions

---

[1] "Finke Decl." refers to the Declaration of Douglas Finke in Support of Defendant STEC's Motion to Sever and Transfer Venue to the Central District of California, executed February 9, 2012. Exh. A.

-1-

regarding the marketing, sales, or pricing of any allegedly infringing products would have occurred predominantly in the Central District of California or outside the U.S. (*Id.* ¶¶ 2-4) The vast majority of STEC's technical and marketing documents, as well as any source code for the likely SSD products at issue in this case, are stored at its headquarters in Santa Ana, California. (*Id.* ¶ 5) The majority of STEC's U.S. employees who are involved in SSD product development are located in the Central District of California. (*Id.* ¶ 4) STEC has not designed, and does not design and develop, SSD products in Texas. (*Id.* ¶ 6) STEC does not have any facilities or offices located in the Eastern District of Texas. (*Id.*) The only employees it has in Texas are five sales/sales support employees, four of whom are located outside the Eastern District of Texas. (*Id.*) Only three out of hundreds of STEC customers are located in this District. (*Id.* ¶ 9) In fact, only a small percentage of STEC's total direct sales occur within the entire United States, let alone Texas or this District. (*Id.*) Instead, STEC sells its SSD products to Original Equipment Manufacturers ("OEMs") primarily outside the United States. (*Id.*) The vast majority of documents relating to revenues resulting from any sales of STEC SSD products in the U.S. are also located in Santa Ana, California. (*Id.*)

### B. Procedural Background

S4 filed its complaint on September 7, 2011. Since then, some defendants have answered (some asserting counterclaims, though not STEC at this time). S4 has replied to the defendants asserting counterclaims. Other than that, the only substantive action relates to various defendants' motions to sever and transfer. The Court has not set a date for the initial scheduling conference. The parties have not exchanged initial disclosures. No trial date has been set, and the parties have not started discovery (except for potential venue discovery).

## II. S4'S CLAIMS AGAINST STEC SHOULD BE SEVERED BECAUSE S4 HAS IMPROPERLY ATTEMPTED TO JOIN STEC IN A GROUP OF NINE UNRELATED DEFENDANTS

All of Fusion-io's and OCZ's arguments in support of severance apply to STEC. As Fusion-io points out, S4's infringement claims contain no purported joint acts of infringement,

no commonly accused products, and no other connection between the infringement claims.  (Dkt. No. 57 at 3-8)  Instead, S4's infringement claims are directed at independent acts of these unrelated companies regarding different, proprietary SSD products, including STEC's.  (Finke Decl. at ¶ 10)  Because these accused acts do not arise out of the same transaction or occurrence, it is improper to join them in a single action.[2]  *See* FED. R. CIV. P. 20(a).  Further, STEC's SSD products are confidential and proprietary, and STEC would be prejudiced if it were required to litigate regarding these products in a case together with its direct competitors.  (Finke Decl. at ¶ 10)  Severance also will prevent a number of other prejudices, such as the sheer number and complexity of disparate issues across nine unrelated defendants that the Court and jury will need to separately analyze and understand.   Accordingly, S4's claims against STEC should be severed.

## III.   S4'S CLAIMS AGAINST STEC SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA BECAUSE IT IS A CLEARLY MORE CONVENIENT VENUE

Once severed from the other parties in this case, this litigation between STEC and S4 should be transferred to the Central District of California where STEC is headquartered because the convenience factors overwhelmingly favor a transfer to California.  *See* 28 U.S.C. § 1404(a).

### A.   Legal Standards

Change of venue is governed by 28 U.S.C § 1404(a).  Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought."  A motion

---

[2] In addition to the expansive authority cited by Fusion-io, its notable that a Florida district court has recently agreed with numerous other district courts, holding that the minority view on joinder of unrelated defendants set out in *Mymail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004) "is unpersuasive." *See Brandywine Commc'ns. Techs., LLC v. Apple, Inc.*, No. 6:11-cv-1512, slip op. at 4-6  (M.D. Fla. Jan. 24, 2012) (recommending that claims against each defendant be severed because infringement of the same patent by each of the defendants "is not enough to meet the 'same transaction or occurrence' requirement of Rule 20" and severance in such cases is "in full accord with" the Leahy–Smith America Invents Act, 35 U.S.C. § 299); *accord Pinpoint, Inc. v. Groupon, Inc.*, 11 C 5597, 2011 WL 6097738 at *1 n.1 (N.D. Ill. Dec. 5, 2011).

to transfer venue should be granted only upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004); *Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*, No. 2:10-cv-328-JRG, ECF No. 90, slip op. at 3 (E.D. Tex. Jan 23, 2012) (holding that where defendants have failed to prove the case could have been brought in the transferee forum, their transfer motions "fail from the start"). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. *Volkswagen I*, 371 F.3d at 203.

In making the convenience determination, the Fifth Circuit considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* S4's choice of venue is not a factor in the analysis. *Id.* at 315.

## B.   S4's Claims Against STEC Could Have Been Brought in the Central District of California

This case meets the threshold  transfer requirement, *i.e.*, the Central District of California would be able to exercise personal jurisdiction over STEC, and venue in that district would be

proper.  "A civil action for patent infringement may be brought in the judicial district where the defendant resides . . . ."  28 U.S.C. § 1400(b).  A defendant corporation is deemed to reside in "any judicial district in which it is subject to jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  Consequently, for corporate defendants, the test for proper venue under § 1400(b) is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced.  *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990) (Section 1400(b) incorporates the requirements of Section 1391(c) for corporate defendants).  That test is easily satisfied for STEC with regard to the Central District of California.

 STEC's headquarters are in Santa Ana, California, and it has been headquartered in the Central District of California since its founding in 1990.  (Finke Decl. ¶ 3.)  Accordingly, the threshold transfer requirement is met.

C.     **The Private Interest Factors Weigh Heavily In Favor of Transfer**

    1.     **A Majority of STEC's Witnesses and Documents are in the Central District California; None are in the Eastern District of Texas**

The relative ease of access to sources of proof is the first "private" interest factor to consider.  Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor.  *See Volkswagen II*, 545 F.3d at 316.  Applying Fifth Circuit law, the Federal Circuit has held that an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases.  *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

Because the vast majority of evidence relevant to S4's claims against STEC is located in the Central District of California, and none is in the Eastern District of Texas, ease of access to sources of proof strongly favors transfer.  S4's allegations concern STEC's "SSD products" (*See*, Dkt. 1, Complaint at ¶¶ 56–58.) and STEC's SSD products at issue were designed, developed,

and tested primarily at their headquarters located in the Central District of California[3] or abroad, in Malaysia, Taiwan, India, and the United Kingdom.  (Finke Decl. ¶ 4)  A majority of documents relating to the design, development, and testing of STEC's products are also located there.[4]  Similarly, STEC's key party witnesses -- the people who know the most about the design, development, testing and manufacture of the accused products -- are also based in the Central District of California.  (*Id.* ¶¶ 4, 5)  In addition, STEC's technical marketing and financial operations are based out of its Santa Ana corporate headquarters, and, therefore, the vast majority of relevant technical marketing and financial sources of proof are located there. (*Id.*)

Although S4 may oppose transfer on the basis that its principal place of business is located in this District, offices established in anticipation of litigation (and documents transferred there) to manipulate venue are not relevant to the transfer analysis.  *See In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2010) (rejecting the argument that weight be given to the principal place of business where the offices "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue"). S4 incorporated in Texas and established "business operations" in this District for the sole purpose of manipulating venue: having been formed on May 5, 2007 as a Madison, Wisconsin Limited Liability Company, it subsequently registered as a Texas corporation with a new listed principal place of business in Marshall, Texas, effective October 1, 2009[5] and filed this suit on

---

[3] The Central District of California is composed of four divisions.  STEC's headquarters is located in the Southern Division, which holds court in Santa Ana, California.  STEC's headquarters is less than five miles from the Santa Ana courthouse.

[4] In spite of advances in technology that have made it easier to "transport" evidence to the trial venue, this factor should still be given its due weight.  *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011) (rejecting a district court's ruling that issues relating to location of evidence are "outdated, irrelevant, and should be given little weight"); *see also ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 123–24 (E.D. Tex. June 25, 2009) (Davis, J.) (finding physical proximity to trial venue applicable for electronic evidence).

[5] *See* Exh. B, Certificate of Conversion, at 1 (Also attached as Exh. B to Dkt. Nos. 57 and 74).

September 7, 2011.  (*See* Dkt. 1, Complaint)  Despite the state of incorporation[6] and the listed "principal place of business," S4 appears not to conduct any operations in Texas, nor to staff any employees in Texas.[7]  The corporation's initial board of directors was composed of two members living in Milpitas, California and two members living in Tokyo, Japan.[8]  With no other ties to, or business activities in, this District, S4's presence in Texas "appears to be recent, ephemeral, and an artifact of litigation," and should not be entitled to any weight.[9]  *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (citing *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1195 (2010)) ("urging courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempts at manipulation"); *In re Hoffmann-La Roche*, Inc., 587 F.3d 1333, 1337 (Fed. Cir. 2009).

Further, all of the named inventors of all patents in suit are Japanese, as is the original assignee of five of the patents in suit,[10] Hitachi Ltd.  Likewise, the original assignee of two other patents in suit,[11] Renesas Technology Corp., is located in Japan.[12]  Tokyo, Japan (the likely

---

[6]  A party's state of incorporation is not an important factor for a venue inquiry under § 1404.  *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1223-24 (rejecting as inappropriate, a district court's heavy reliance on the fact that the plaintiff was incorporated in the forum state).

[7]  This Court has recently held that this factor weighed in favor of transfer where plaintiff had identified only a single employee in Longview, TX, while the managers of the plaintiff entity resided closer to the transferee forum.  *See Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, ECF No. 121, slip op. at 7 (E.D. Tex. Jan. 23, 2012).  Here, it appears the plaintiff does not have any employees in the Eastern District of Texas, and its managers are, in fact, closer to Central California.

[8]  *See* Exh. B, Certificate of Conversion, at 5–6 (Also attached as Exh. B to Dkt. Nos. 57 and 74).  S4's most recent public filing, its December 12, 2010 Public Information Report, lists only the corporation's Marshall, Texas address for its four directors and CEO; three of the four directors, however, are the same people identified in S4's Certificate of Conversion as having Tokyo, Japan and Milpitas, California addresses (Kentaro Fukuda, Hironori Seki, and E. Earle Thompson). *See* Exh. C, Public Information Report (Also attached as Exh. C to Dkt. Nos. 57 and 74).  There is no indication of the place of residence of the CEO and other, newly added, director.

[9]  In deciding whether S4's presence in the Eastern District is ephemeral, the Court should consider not just the duration of its presence, but also its nature.  *See In re Apple Inc.*, 374 F. App'x 997, 999 (Fed. Cir. 2010) ("To be sure, the status of [plaintiff], as a Texas corporation is not entitled to significant weight, inasmuch as the company's presence in Texas appears to be both recent and ephemeral-its office is apparently the office of its Texas litigation counsel, and it appears not to have any employees in Texas.") (emphasis added); *see also In re Verizon Business Network Svc's Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (transferring a case out of this District where the plaintiff had no employees in its local office but had argued that its principal place of business was in Marshall, and it had maintained sources of proof in this District from a prior related litigation seven years ago).

[10]  U.S. Patent Nos. 6,341,085, 6,347,051, 6,370,059, 6,567,334 and 6,701,471.

[11]  U.S. Patent Nos. 7,064,995 and 7,234,087.

departure point for international travel and delivery of documents) is closer to Santa Ana, California than East Texas.

Although STEC employs five people in Texas, these employees work in sales, sales support, and business development of STEC's products. (Finke Decl. ¶ 9)   The primary responsibility of these employees is to support customers' integration of STEC's products into their own products.  (*Id.*)  They were not involved in the design, engineering, or manufacture of STEC's SSD products and do not possess detailed or unique information concerning those products.  (*Id.*)  It is highly unlikely any of these individuals will be witnesses in this case. Although these employees may have access to some relevant sales and marketing documents, the employees use STEC's central servers located in Santa Ana, California, and any such documents are duplicative of those located in Santa Ana.  (*Id.*)  The existence of a few duplicative documents in Texas, which may or may not be relevant, does not tip the scales against transfer. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (holding that documents of one defendant located in Texas are insufficient to tip the scales against transfer when the vast majority of evidence is located within the transferee venue).  Given the substantial evidence in California, and the relative proximity of other relevant evidence, this factor weighs heavily in favor of transfer.

> ### 2.      The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer

The ability to use compulsory process to secure the attendance of non-party witnesses weighs more heavily in favor of transfer when more of those witnesses reside in the transferee venue.  *Volkswagen II*, 545 F.3d at 316-17.  The known non-party witnesses in this case -- the patent inventors and prosecution counsel -- do not reside within either the Eastern District of

---

[12] Renesas Technology Corp. was acquired by Renesas Electronics Corporation in April 2010; Renesas Electronics Corporation is located in Japan. *See* Bloomberg Businessweek, Renesas Technology Corp., Company Overview, *available at* http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=4959935 (Jan. 25, 2012).

Texas or the Central District of California. To the extent additional non-party witnesses are uncovered as litigation progresses, however, it is more likely they will reside within the compulsory process range of the Central District of California than of the Eastern District of Texas. For example, as this Court recently noted, former employees of a defendant are much more likely to reside in the District where the employer is located. *See Network Protection Sciences*, No. 2:10-CV-224-JRG, slip op. at 9 ("Given that [defendant's] former facility was in San Jose, California, it is reasonable to assume that at least some of these individuals reside within 100 miles of the Northern District's courthouses and, therefore, will be subject to the absolute subpoena power of the Northern District of California."); (Finke Decl. at ¶ 8). Accordingly, this factor weighs in favor of transfer.

### 3. The Cost of Attendance for Willing Witnesses Strongly Favors Transfer to California

The "convenience of parties and witnesses" is an important -- perhaps the single most important -- factor in the transfer analysis. *Genentech*, 566 F.3d at 1343. The Federal Circuit has held time and again that, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d at 1198. This factor weighs heavily in favor of transfer because the Central District of California is the more convenient forum for almost every likely witness. STEC's key witnesses with knowledge of the accused products, marketing information, and financial data are located in Santa Ana, California, as are all of its senior management.[13]

Transfer to the Central District of California therefore eliminates at least 1,500 miles of travel to Marshall for each of those witnesses.[14] "When the distance between an existing venue

---

[13] STEC's senior executives, technical marketing and the vast majority of STEC's U.S. employees involved in the design, development, and testing of SSD Products at issue are all located in the Central District of California. (Finke Decl. at ¶ 5.)

[14] According to travel website Kayak.com, the Santa Ana witnesses travelling to Marshall would have to endure approximately 6 hours of flight time, with one stop to airports within 70 miles of Marshall.

for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05.   The other potentially relevant witnesses in this case -- the patents' named inventors and original assignees in Japan -- are closer to California than Marshall.[15]   And, not only are those witnesses substantially geographically closer to California, but also their cost and time of travel is significantly lower due to the comparative ease of air travel to Los Angeles,[16] which has one of the world's busiest airports and is clearly more accessible by international travel than Marshall.[17]

Santa Ana is also substantially more convenient for another group of non-party witnesses, namely, former STEC employees who may have knowledge of design and development of the SSD products and likely continue to reside in Central California.   *See Network Protection Sciences*, slip op. at 11.

Thus, the number of witnesses residing in Texas, if any, and any relevant information which they may provide, pales in comparison to the number of party and non-party witnesses with relevant information residing in California.   *Id.*

---

[15] The prosecuting law firms of the patents in suit, Antonelli, Terry, Stout & Kraus, LLP and Mattingly, Stanger, Malur & Brundidge, P.C., are located in Arlington, VA and Alexandria, VA, respectively.  Marshall is approximately 1,400 miles closer to Arlington and Alexandria than Santa Ana.  This fact arguably makes for less relative inconvenience for two relevant witnesses as compared to the numerous others in this case.  According to travel website Kayak.com, however, the actual travel time for these witnesses from Washington, D.C. airports to Marshall and to Santa Ana, CA is approximately the same due to the relative ease of travel to Los Angeles: flights from Washington, D.C. to Marshall require 1 stop and take approximately 5 hours, while flights to Los Angeles are nonstop and take approximately 5.5 hours. *Cf. Telecom Tech. Servs., Inc. v. Rolm Co.*, No. CIV. A. 9:94 CV 145, 1995 WL 874441, at *2 (E.D. Tex. Feb. 24, 1995) ("Also, the Court takes judicial notice that Lufkin, Texas, wherein the trial would be held were it to occur in this district, has no airport servicing major airlines, whereas it is well known that Atlanta is a major transportation hub of the Southeast.").

[16] The Los Angeles International Airport is approximately 40 miles from the Santa Ana courthouse.

[17] As per Kayak.com, flights from Tokyo to Los Angeles are nonstop and take approximately 9.5 hours, while flights to airports near Marshall require 2 stops and take 20 hours. *Cf. Naschem Co. v. Blackswamp Trading Co.*, No. 08-cv-730-SLC, 2009 WL 1307865, at *3 (W.D. Wis. May 8, 2009) ("Because plaintiffs are citizens of Korea, both Wisconsin and Illinois are inconvenient for them. If anything, Illinois would be slightly less so because of more direct international access to Chicago.").  Given more than double the flight time, and the two additional stops to Marshall, Central California is clearly the more convenient forum to these witnesses coming from the Far East.

### 4.   No Practical Problems Arise in Connection with Transferring this Case to the Central District of California

There are no practical problems that arise in connection with transferring this case to the Central District of California, which further weighs in favor of transfer. There has not been any discovery to date, and the scheduling conference has not been set. Further, little benefit follows from keeping this case together with the other defendants because the allegedly infringing STEC systems are unique from those of other defendants. (Finke Decl. ¶ 9.) STEC has developed proprietary devices that are distinct from its competitors, and significant differences necessarily exist with respect to the discovery and evidence regarding those devices. (*See id.*)

Any alleged judicial efficiency of holding a common claim construction in this District does not override the transfer analysis. As an initial matter, the Federal Circuit has repeatedly stated that judicial efficiency is not an overriding factor and has ordered transfer where, as here, the other factors weighed toward the transferee venue. *See In re Morgan Stanley*, Misc. Nos. 962, 964, 967, 2011 WL 1338830, at *2 (Fed. Cir. April 6, 2011) ("This court twice recently considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue." (citing *Zimmer Holdings*, 609 F.3d at 1382, and *In re Verizon*, 635 F.3d 559 (Fed. Cir. 2011)).

Even if pretrial considerations such as claim construction make it desirable for litigation between S4 and all defendants to proceed in a single forum, multidistrict litigation procedures described in 28 U.S.C. § 1407 are available after severance and transfer to provide a far more efficient result than retention of all defendants in the Eastern District of Texas.[18]

---

[18] A consolidated claim construction does not necessarily promote efficiency, especially where, as here, defendants have unique products. *See WiAV Networks, LLC v. 3Com Corp.*, 2010 WL 3895047, at *3 (N.D. Cal. Oct. 1, 2010) (Severing unrelated defendants while noting: "[W]hile it would be nice to have an identical set of elaborations on the asserted claims for each accused product, even that is not practical, for the differences in the products themselves will provoke differences in which words and slants in the claim language really matter. . . . In other words, the claim-construction work will not be the same for all defendants, even those facing trial on the same patent claim. The claim-construction work must be adapted to the actual issues being litigated over the varying accused devices."). The Federal Circuit has acknowledged this difficulty, therefore, allowing courts to consider the accused product during the claim construction process for the context of infringement issues. *See Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006) ("Without knowledge of the accused

**D.**     **The Public Interest Factors Weigh Heavily In Favor of Transfer**

       **5.**     **Having Localized Interests Decided at Home Strongly Favors Transfer**

As the Fifth Circuit and this Court have recognized, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. The transfer analysis considers "the 'factual connection' that a case has with both the transferee and transferor venues." *ATEN Int'l*, 261 F.R.D. at 125. "Generally, local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests." *Id.* at 125–26. The Federal Circuit, applying Fifth Circuit law, has instructed that if the accused product is sold nationwide but many of the witnesses and evidence are located in the transferee venue, this factor favors transfer. *See TS Tech USA Corp.*, 551 F.3d at 1321 (transferring case where "there is no relevant connection between the actions giving rise to this case and the Eastern District of Texas except that certain vehicles containing TS Tech's [accused] headrest assembly have been sold in the venue," and where the majority of the identified witnesses, evidence, and events were located in the transferee forum or its neighboring state).

The Central District of California is home to STEC's headquarters, and the overwhelming majority of witnesses and evidence regarding the accused products are located there. The Central District of California therefore has a strong local interest in this case. *See In re Hoffmann-La Roche*, 587 F.3d at 1336 (the "local interest . . . remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near [the transferee] district and who presumably conduct business in that community").

---

products, this court . . . lacks a proper context for an accurate claim construction."); *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006) (allowing "awareness of the accused product or process to supply the parameters and scope of the infringement analysis, including its claim construction component.").

By contrast, other than S4's "principal place of business" in Marshall, Texas -- entitled to no weight because it was established in anticipation of litigation -- no party or known witness resides in this District.

STEC sells its SSD products to OEMs primarily outside the United States.  (Finke Decl. ¶9)  STEC does not sell its SSD products in any meaningful quantity in this District.  (*Id.*)  And, even if STEC's SSD products ultimately end up in this District, the Federal Circuit and "[t]he Fifth Circuit ha[ve] unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market." *Nintendo*, 589 F.3d at 1198 (quoting *Volkswagen II*, 545 F.3d at 317–18 and *TS Tech*, 551 F.3d at 1321).

### 6.      The Court Congestion Favors Transfer

This litigation is likely to be resolved more quickly in the Central District of California than in this District.  The Central District of California appears to have a shorter median time to disposition (5.7 months as compared to 9.6 months in this District) and median time-to-trial (19.1 months compared to 24.2 months in this District) than the Eastern District of Texas.[19] Moreover, recent judicial vacancies in the Eastern District of Texas and other anticipated vacancies in 2012 may well increase these Eastern District of Texas figures going forward.  As a result, this is not a situation where the case is being transferred from a less congested to a more congested docket.  Accordingly, this factor favors transfer.

### 7.      The Remaining Public Interest Factors are Neutral

The remaining public-interest factors -- the familiarity of the forum with the law and the avoidance of unnecessary problems or conflicts of laws or in the application of foreign law -- are neutral.  The Eastern District of Texas and the Central District of California are equally capable of applying patent law.  *See TS Tech*, 551 F.3d at 1320 (concluding that because patent claims

---

[19] See Administrative Office of the United States Courts, Judicial Business 2010, Table C-5, available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2010/appendices/C05Sep10.pdf (Dec. 6, 2011).

are governed by federal law, all district courts are capable of applying patent law to infringement claims); *see also In re Link_A_Media Devices Corp.*, 662 F.3d at 1224 (same).  In addition, there are no issues regarding either conflicts of law or application of foreign law that affect whether this case should be transferred.  In short, this is "a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, [and accordingly] the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198.

## IV.   CONCLUSION

For these reasons, STEC asks the Court to sever S4's claims against it and transfer them to the Central District of California.

Dated: February 10, 2012                Respectfully submitted,

                                        /s/ David M. Stein
                                        David M. Stein *(Lead Attorney)*
                                        Texas State Bar No. 00797494
                                        AKIN GUMP STRAUS HAUER & FELD LLP
                                        633 West Fifth Street, Suite 5000
                                        Los Angeles, CA 90071
                                        213.254.1200
                                        Fax: 213.254.1201
                                        dstein@akingump.com

                                        Steven M. Zager
                                        Texas State Bar No. 22241500
                                        AKIN GUMP STRAUS HAUER & FELD LLP
                                        One Bryant Park
                                        New York, NY 10036
                                        212.872.1000
                                        Fax: 212.872.1002
                                        szager@akingump.com

                                        Todd E. Landis
                                        Texas State Bar No. 24030226
                                        AKIN GUMP STRAUS HAUER & FELD LLP
                                        1700 Pacific Avenue, Suite 4100
                                        Dallas, TX 75201
                                        214.969.2800
                                        Fax: 214.969.4343
                                        tlandis@akingump.com

                                        Melissa R. Smith
                                        Texas Bar No. 24001351
                                        GILLAM & SMITH, L.L.P.
                                        303 South Washington Avenue
                                        Marshall, TX 75670
                                        (903) 934-8450
                                        Fax: (903) 934-9257
                                        melissa@gillamsmithlaw.com

                                        **COUNSEL FOR DEFENDANT STEC, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 10, 2012.  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ David M. Stein*
David M. Stein *(Lead Attorney)*

## CERTIFICATE OF CONFERENCE

I certify that counsel for STEC, Inc. and Solid State Storage Solutions, Inc. have complied with the meet and confer requirement in Local Civil Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Civil Rule CV-7(h) was conducted on February 9, 2012, by telephone. Melissa R. Smith participated for STEC, Inc., and Ted Stevenson participated for Solid State Storage Solutions, Inc. An agreement was not reached because the parties have opposing views on the relief requested by this motion. The discussions have conclusively resulted in an impasse, leaving for the Court to decide the motion.

*/s/ Melissa R. Smith*
Melissa R. Smith